## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

TITLE CAPITAL MANAGEMENT, LLC, a Florida limited liability company,

       Plaintiffs,

vs.

PROGRESS RESIDENTIAL, LLC, a Delaware limited liability company, f/k/a Fundamental REO, LLC; JOHN DOE 1, an individual; FREO FLORIDA, LLC, a Delaware limited liability company; JOHN DOE 2, an individual; JAMES E. ALBERTELLI, P.A., a Florida professional association; JAMES E. ALBERTELLI, an individual; and JONATHAN D. SAWYER, an individual,

       Defendants.

Case No. : 16-cv-21882-KMW

---

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TITLE CAPITAL MANAGEMENT, LLC, ("Plaintiff" or "Title Capital") sues Defendants PROGRESS RESIDENTIAL, LLC, f/k/a Fundamental REO, LLC, ("Progress Residential"), JOHN DOE 1, FREO FLORIDA, LLC ("FREO"), JOHN DOE 2, JAMES E. ALBERTELLI, P.A. ("Albertelli P.A."), JAMES E. ALBERTELLI ("Albertelli"), and JONATHAN D. SAWYER ("Sawyer") (collectively "Defendants") and alleges:

### Introduction

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

2. Title Capital is the owner of: (1) U.S. Copyright Registration Number TXu 1-990-009 covering an original "compilation, selection and organization of section headings of [a] real

1

property spreadsheet," *see* Composite Exhibit A (certificate of registration, spreadsheet and assignment), and (2) U.S. Copyright Registration Number TXu 1-990-000 covering an original "compilation, selection and organization of section headings of [a] real property spreadsheet," *see* Composite Exhibit B (certificate of registration and spreadsheet).   Collectively, the two spreadsheets covered by these two copyright registrations are referred to herein as the "Copyrighted Works."

3.      After further opportunity for investigation or discovery, the facts will likely show that, in violation of 17 U.S.C. § 106, Defendants directly and indirectly infringed Plaintiff's exclusive rights to: (a) reproduce, (b) prepare derivatives of, (c) distribute, and (d) display the Copyrighted Works.

### The Parties

4.      Title Capital is a limited liability company organized and existing under the laws of the State of Florida.

5.      Progress Residential is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 7500 N. Dobson Road, Suite 300, Scottsdale, AZ 85256.

6.      Progress Residential is registered with the Florida Department of State, Division of Corporations as a foreign limited liability company authorized to transact business in Florida, and may be served with process herein by delivery to its registered agent, C T Corporation System at 1200 South Pine Island Road, Plantation, FL 33324.

7.      John Doe 1 is an individual whose name and address are presently unknown. He is a member, manager, or officer of Progress Residential and for the reasons set forth below is jointly and severally liable for the infringement. Plaintiff will be able to identify John Doe 1 by

name in an amended complaint after Plaintiff is able to propound and obtain discovery to determine his identity.

8.     FREO is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 7500 N. Dobson Road, Suite 300, Scottsdale, AZ 85256.

9.     FREO is registered with the Florida Department of State, Division of Corporations as a foreign limited liability company authorized to transact business in Florida, and may be served with process herein by delivery to its registered agent, C T Corporation System at 1200 South Pine Island Road, Plantation, FL 33324.

10.     John Doe 2 is an individual whose name and address are presently unknown. He is a member, manager, or officer of FREO and for the reasons set forth below is jointly and severally liable for the infringement. Plaintiff will be able to identify John Doe 2 by name in an amended complaint after Plaintiff is able to propound and obtain discovery to determine his identity.

11.     Progress Residential and FREO are related corporate entities that share a common parent or controlling interest.

12.     Albertelli P.A. is a professional association organized and existing under the laws of the State of Florida, with its principal place of business located at 208 N. Laura Street, Suite 900, Jacksonville, Florida 32202.

13.     Albertelli P.A. also has an office, from which it regularly conducts business, located at 633 SE 3rd Avenue, Fort Lauderdale, Florida 33301.

3

14.     Albertelli P.A. may be served with process herein by delivery to its registered agent, Smith Husley & Bulsey, Professional Association, at 225 Water Street, Suite 1800, Jacksonville, Florida 32202.

15.     Albertelli is an individual who resides at 13868 Atlantic Boulevard, Jacksonville, Florida 32224.

16.     Sawyer is an individual who resides at 4925 Andros Drive, Tampa, Florida 33629.

**Jurisdiction and Venue**

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).   This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18.     This Court also has personal jurisdiction over all Defendants because each: (i) operated, conducted, engaged in, or carried on a business or business venture in Florida or had an office or agency in Florida from which the cause(s) of action alleged herein arise; (ii) committed the tortious act(s) alleged herein within Florida; (iii) owned, used, or possessed real property within Florida which is the subject of the cause(s) of action alleged herein; (iv) caused injury to Title Capital in Florida and in this judicial district; and/or (v) engaged in substantial and not isolated business activities in Florida.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because (i) a substantial part of the events or omissions giving rise to the claim(s) occurred in this district, or (ii) Defendants are subject to the Court's personal jurisdiction within this district; additionally,

venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendants' agents reside or may be found in this district.

### Factual Background

*A.    The Nature of the Copyrighted Works*

20.    The Copyrighted Works are sophisticated spreadsheets created from substantial time and effort and contain an original order, selection, and arrangement of rows and columns, as well as original macros.

*B.    The Title Capital / FREO Business Relationship*

21.    FREO and Progress Residential are related companies that share a common parent or controlling interest and are in the business of acquiring and managing real property.

22.    FREO acquires and holds the title to real property.

23.    Progress Residential manages and collects rent from the real property owned by FREO.

24.    In late 2012, Title Capital entered into a business arrangement with FREO and Progress Residential whereby Title Capital would provide services to them. A partially-executed written contract, describing the terms and conditions of the proposed business relationship, was initially sent by Title Capital to nonparty Fundamental REO LP for execution. Fundamental REO LP subsequently executed the contract and assigned its rights and obligations under the written agreement to Defendant FREO, effective November 2012. Copies of the Contract and Assignment are attached hereto as Composite Exhibit 1.

25.    During the term of Title Capital and FREO and Progress Residential's business relationship, Title Capital provided FREO and Progress Residential with the Copyrighted Works.

26.   In consideration for its services, and the use of the Copyrighted Works, Title Capital received a four percent (4%) commission on the real property that FREO acquired using Title Capital's services or the Copyrighted Works.

27.   FREO uploaded the Copyrighted Works to a shared folder that was accessible to FREO and Progress Residential employees.

28.   Title Capital, FREO and Progress Residential planned on acquiring approximately one hundred million dollars ($100,000,000) worth of real property.

29.   During the term of Title Capital, FREO and Progress Residential's business relationship, FREO used Title Capital's services and the Copyrighted Works to acquire approximately thirty million dollars ($30,000,000) worth of real property.

C.   *Termination of the Title Capital / FREO Business Relationship and Infringement of the Copyrighted Works*

30.   By April 2013, FREO stopped paying Title Capital the commissions that were owed on properties that Title Capital acquired for FREO and, at that time, FREO and Progress Residential initiated meetings with a competitor seeking to perform Title Capital's work and offering to perform Title Capital's services for half the commission.  FREO also stopped paying Title Capital for the title and lien searches needed to identify target properties at that time. FREO and Progress Residential terminated their business relationship with Title Capital shortly after meeting with this competitor in or about April or May of 2013.

31.   After further opportunity for investigation or discovery, the facts will likely show that at or around the time of the termination of FREO and Progress Residential's business relationship with Title Capital, FREO and Progress Residential engaged Albertelli P.A., Albertelli, and Sawyer to provide substantially the same services that Title Capital had theretofore provided them.

32. Albertelli P.A., Albertelli, and Sawyer performed this work for a commission of two percent (2%), which is half the commission that FREO and Progress Residential had agreed to pay Title Capital.

33. After further opportunity for investigation or discovery, the facts will likely show that Albertelli P.A., Albertelli, and Sawyer reproduced, prepared derivative works from, publicly displayed, and otherwise used the Copyrighted Works to provide services to FREO and Progress Residential.

34. But for their infringement, Albertelli P.A., Albertelli, and Sawyer would not have earned commissions, the associated profits should be disgorged in connection with this litigation.

35. Albertelli P.A., Albertelli, and Sawyer also performed ancillary legal services for FREO and Progress including title and lien searches for which they made fees.

36. But for their infringement, Albertelli P.A., Albertelli, and Sawyer would not have made these fees, the associated profits should be disgorged in connection with this litigation.

37. After further opportunity for investigation or discovery, the facts will likely show that FREO, Progress Residential, Albertelli P.A., and Albertelli reproduced, prepared derivative works from, publicly displayed, and otherwise used the Copyrighted Works to identify, price, and then cause FREO to purchase approximately forty million dollars ($40,000,000) worth of real property.

38. As intended at the time of acquisitions, the real property acquired by FREO with Albertelli P.A., Albertelli, and Sawyer's assistance appreciated substantially.

39. Progress Residential managed and collected rents from the real property acquired by FREO when it was working with Albertelli P.A., Albertelli, and Sawyer.

40. Title Capital did not authorize FREO, Progress Residential, Albertelli P.A., Albertelli, or Sawyer to reproduce, prepare derivative works from, to publicly display, or to otherwise use the Copyrighted Works when Title Capital was not involved.

41. After further opportunity for investigation or discovery, the facts will likely show that FREO and Progress Residential distributed copies of the Copyrighted Works to Albertelli P.A., Albertelli, and Sawyer with the intention and knowledge that they would reproduce, prepare derivative works from, publicly display, and otherwise use the Copyrighted Works in the performance of their services to FREO and Progress Residential.

42. Title Capital did not authorize FREO and Progress Residential's distribution of the Copyrighted Works to Albertelli P.A., Albertelli, or Sawyer.

43. John Doe 1 knew or should have known that Progress Residential was not authorized to reproduce, prepare derivative works from, public display, and otherwise use the Copyrighted Works after FREO, Progress Residential and Title Capital's business relationship was terminated.

44. John Doe 2 knew or should have known FREO was not authorized reproduce, prepare derivative works from, public display, and otherwise use the Copyrighted Works after FREO, Progress Residential and Title Capital's business relationship was terminated.

45. After further opportunity for investigation or discovery, the facts will likely show that John Doe 1 personally directed and benefited from Progress Residential's infringement of the Copyrighted Works.

46. John Doe 1 possessed the authority to prevent the infringement of the Copyrighted Works.

47.   After further opportunity for investigation or discovery, the facts will likely show that John Doe 2 personally directed and benefited from FREO's infringement of the Copyrighted Works.

48.   John Doe 2 possessed the authority to prevent the infringement of the Copyrighted Works.

49.   Progress Residential and FREO, and John Does 1 and 2 through their respective positions at Progress Residential and FREO, had the right and ability to supervise or control the manner in which Albertelli P.A., Albertelli, and Sawyer provided their services.

50.   After further opportunity for investigation or discovery, the facts will likely show that John Doe 1 personally directed and benefited from Progress Residential's unauthorized distribution of the Copyrighted Works to Albertelli P.A., Albertelli, and Sawyer, rather than utilizing the authority and power of his position with Progress Residential to prevent such actions.

51.   After further opportunity for investigation or discovery, the facts will likely show that John Doe 2 personally directed and benefited from FREO's unauthorized distribution of the Copyrighted Works to Albertelli P.A., Albertelli, and Sawyer rather than utilizing the authority and power of his position with FREO to prevent such actions.

52.   Indeed, as a result of the infringements, John Does 1 and 2 profited from the infringements described herein through the receipt of payment in the form of salaries, bonuses, dividends, and/or distributions.

53.   Title Capital did not authorize Albertelli P.A., Albertelli, and Sawyer's reproduction, preparation of derivative works from, public display, and other uses of the Copyrighted Works, and Defendants knew or should have known that such was not authorized.

54.     After further opportunity for investigation or discovery, the facts will likely show that Albertelli personally directed and benefited from Albertelli P.A.'s unauthorized reproduction, preparation of derivative works from, public display, and other uses of the Copyrighted Works, rather than utilizing the authority and power of his position with Albertelli P.A. to prevent such actions.

55.     As a result of the infringements described herein, FREO profited by, inter alias: (i) the reduced commissions paid to Albertelli P.A., Albertelli, and Sawyer; and (ii) through the acquisition of and appreciation in value of the real property; these profits should be disgorged in connection with this litigation.

56.     As a result of the infringements described herein, Progress Residential profited by receiving rental income and management fees, and these profits should be disgorged in connection with this litigation.

## Miscellaneous

57.     All conditions precedent to brining this action have occurred or been waived.

### COUNT I
### Direct Infringement of Copyrights
### (Against Defendant Progress Residential, LLC)

58.     The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

59.     Title Capital is the owner of the Copyrighted Works each of which covers an original work of authorship.

60.     After further opportunity for investigation or discovery, the facts will likely show that Progress Residential reproduced, distributed, and/or displayed the constituent elements of each of the original Copyrighted Works, and/or created derivative works based thereon.

10

61.     Plaintiff did not permit, consent, or authorize Defendant's copying, distributing, displaying, or creating derivate works based on the Copyrighted Works.

62.     As a result of the foregoing, Progress Residential violated Plaintiff's exclusive rights to:

A.     Reproduce the Copyrighted Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

B.     Prepare derivative works based upon the Copyrighted Works, in violation of 17 U.S.C. §§ 106(2) and 501;

C.     Distribute copies of the Copyrighted Works to the public by sale or other transfer of ownership, or by rental lease, or lending, in violation of 17 U.S.C. §§ 106(3) and 501; and

D.     Display the Copyrighted Works publicly, in violation of 17 U.S.C. §§ 106(5) and 501.

63.     Progress Residential's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

64.     As a direct and proximate result of Progress Residential's infringement Plaintiff suffered substantial monetary damages and other irreparable harm.

65.     As a direct and proximate result of Progress Residential's infringement Progress Residential made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A)     Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)     Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)     Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)     Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT II
### Direct Infringement of Copyrights
### (Against Defendant FREO Florida, LLC)

66.     The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

67.     Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

68.     After further opportunity for investigation or discovery, the facts will likely show that FREO reproduced, distributed, and/or displayed the constituent elements of each of the original Copyrighted Works, and/or created derivative works based thereon.

69.     Plaintiff did not permit, consent, or authorize FREO's copying, distributing, displaying, or creating derivate works based on the Copyrighted Works.

70.     As a result of the foregoing, FREO violated Plaintiff's exclusive rights to:

A.      Reproduce the Copyrighted Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

B.      Prepare derivative works based upon the Copyrighted Works, in violation of 17 U.S.C. §§ 106(2) and 501;

C.      Distribute copies of the Copyrighted Works to the public by sale or other transfer of ownership, or by rental lease, or lending, in violation of 17 U.S.C. §§ 106(3) and 501; and/or

D.     Display the Copyrighted Works publicly, in violation of 17 U.S.C. §§ 106(5) and 501.

71.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

72.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered substantial monetary damages and other irreparable harm.

73.     As a direct and proximate result of FREO's infringement FREO made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A)     Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)     Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)     Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)     Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT III
### Direct Infringement of Copyrights
**(Against Defendant James E. Albertelli, P.A.)**

74.     The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

75.     Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

13

76. After further opportunity for investigation or discovery, the facts will likely show that Albertelli, P.A. reproduced, distributed, and/or displayed the constituent elements of each of the original Copyrighted Works, and/or created derivative works based thereon.

77. Plaintiff did not permit, consent, or authorize Defendant's copying, distributing, displaying, or creating derivate works based on the Copyrighted Works.

78. As a result of the foregoing, Albertelli P.A. violated Plaintiff's exclusive rights to:

A. Reproduce the Copyrighted Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

B. Prepare derivative works based upon the Copyrighted Works, in violation of 17 U.S.C. §§ 106(2) and 501;

C. Distribute copies of the Copyrighted Works to the public by sale or other transfer of ownership, or by rental lease, or lending, in violation of 17 U.S.C. §§ 106(3) and 501; and/or

D. Display the Copyrighted Works publicly, in violation of 17 U.S.C. §§ 106(5) and 501.

79. Albertelli P.A.'s infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

80. As a direct and proximate result of Albertelli P.A.'s wrongful conduct, Plaintiff has suffered substantial monetary damages and other irreparable harm.

81. As a direct and proximate result of Albertelli P.A.'s infringement, Albertelli P.A. made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

14

(A)     Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)     Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)     Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)     Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT IV
### Direct Infringement of Copyrights
### (Against Defendant James E. Albertelli)

82.     The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

83.     Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

84.     After further opportunity for investigation or discovery, the facts will likely show that Albertelli reproduced, distributed, and/or displayed the constituent elements of each of the original Copyrighted Works, and/or created derivative works based thereon.

85.     Plaintiff did not permit, consent, or authorize Defendant's copying, distributing, displaying, or creating derivate works based on the Copyrighted Works.

86.     As a result of the foregoing, Albertelli violated Plaintiff's exclusive rights to:

A.     Reproduce the Copyrighted Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

B.     Prepare derivative works based upon the Copyrighted Works, in violation of 17 U.S.C. §§ 106(2) and 501;

15

C.      Distribute copies of the Copyrighted Works to the public by sale or other transfer of ownership, or by rental lease, or lending, in violation of 17 U.S.C. §§ 106(3) and 501; and/or

D.      Display the Copyrighted Works publicly, in violation of 17 U.S.C. §§ 106(5) and 501.

87.     Albertelli's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

88.     As a direct and proximate result of Albertelli's wrongful conduct, Plaintiff has suffered substantial monetary damages and other irreparable harm.

89.     As a direct and proximate result of Albertelli's infringement, Albertelli made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A)     Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)     Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)     Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)     Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT V
### Direct Infringement of Copyrights
### (Against Defendant Johnathan D. Sawyer)

90.     The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

16

91.  Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

92.  After further opportunity for investigation or discovery, the facts will likely show that Sawyer reproduced, distributed, and/or displayed the constituent elements of each of the original Copyrighted Works, and/or created derivative works based thereon.

93.  Plaintiff did not permit, consent, or authorize Defendant's copying, distributing, displaying, or creating derivate works based on the Copyrighted Works.

94.  As a result of the foregoing, Sawyer violated Plaintiff's exclusive rights to:

A.  Reproduce the Copyrighted Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

B.  Prepare derivative works based upon the Copyrighted Works, in violation of 17 U.S.C. §§ 106(2) and 501;

C.  Distribute copies of the Copyrighted Works to the public by sale or other transfer of ownership, or by rental lease, or lending, in violation of 17 U.S.C. §§ 106(3) and 501; and/or

D.  Display the Copyrighted Works publicly, in violation of 17 U.S.C. §§ 106(5) and 501.

95.  Sawyer's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

96.  As a direct and proximate result of Sawyer's wrongful conduct, Plaintiff has suffered substantial monetary damages and other irreparable harm.

97.  As a direct and proximate result of Sawyer's infringement, Sawyer made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A)     Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)     Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)     Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)     Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT VI
### Indirect Infringement of Copyrights
### (Against Defendant Progress Residential, LLC)

98.     The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

99.     Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

100.    After further opportunity for investigation or discovery, the facts will likely show that Progress Residential distributed copies of the Copyrighted Works to Albertelli P.A., Albertelli, and Sawyer for the purpose of causing them to use the Copyrighted Works in ways that infringe Plaintiff's exclusive copyrights.

101.    As such, Progress Residential induced and is liable for Albertelli P.A., Albertelli, and Sawyer's infringements of Plaintiff's exclusive copyrights.

102.    After further opportunity for investigation or discovery, the facts will likely show that Defendant, with knowledge of the infringing activity, induced, caused, or materially

contributed to Albertelli P.A., Albertelli, and Sawyer's infringements of Plaintiff's exclusive copyrights.

103. At all relevant times, Progress Residential had the right and ability to supervise or control Albertelli P.A., Albertelli, and Sawyer's infringing conduct. Defendant failed to exercise sufficient supervision or control to prevent Albertelli P.A., Albertelli, and Sawyer's infringements. After further opportunity for investigation or discovery, the facts will likely show that as a direct and proximate result of such failure, Albertelli P.A., Albertelli, and Sawyer infringed Plaintiff's exclusive copyrights.

104. Progress Residential derived substantial financial benefits from Albertelli P.A., Albertelli, and Sawyer's infringements.

105. Progress Residential's conduct constitutes contributory and vicarious infringement of Plaintiff's copyrights in violation of 17 U.S.C. §§ 106, 115, and 501, and further constitutes inducement of infringement.

106. Progress Residential's contributory, vicarious, and inducement of infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

107. As a direct and proximate result of Progress Residential's infringement Plaintiff has suffered substantial monetary damages and other irreparable harm.

108. As a direct and proximate result of Progress Residential's infringement, Progress Residential made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A) Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

19

(B)     Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)     Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)     Grant Plaintiff all such other and further relief this Court deems just and proper.

**COUNT VII**
**Indirect Infringement of Copyrights**
**(Against Defendant FREO Florida, LLC)**

109.     The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

110.     Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

111.     After further opportunity for investigation or discovery, the facts will likely show that FREO distributed copies of the Copyrighted Works to Albertelli P.A., Albertelli, and Sawyer for the purpose of causing them to use the Copyrighted Works in ways that infringe Plaintiff's exclusive copyrights.

112.     As such, FREO induced and is liable for Albertelli P.A., Albertelli, and Sawyer's infringements of Plaintiff's exclusive copyrights.

113.     After further opportunity for investigation or discovery, the facts will likely show that Defendant, with knowledge of the infringing activity, induced, caused, or materially contributed to Albertelli P.A., Albertelli, and Sawyer's infringements of Plaintiff's exclusive copyrights.

114.     At all relevant times, FREO had the right and ability to supervise or control Albertelli P.A., Albertelli, and Sawyer's infringing conduct.   Defendant failed to exercise

20

sufficient supervision or control to prevent Albertelli P.A., Albertelli, and Sawyer's infringements. After further opportunity for investigation or discovery, the facts will likely show that as a direct and proximate result of such failure, Albertelli P.A., Albertelli, and Sawyer infringed Plaintiff's exclusive copyrights.

115.   FREO derived substantial financial benefits from Albertelli P.A., Albertelli, and Sawyer's infringements.

116.   FREO's conduct constitutes contributory and vicarious infringement of Plaintiff's copyrights in violation of 17 U.S.C. §§ 106, 115, and 501, and further constitutes inducement of infringement.

117.   FREO's contributory, vicarious, and inducement of infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

118.   As a direct and proximate result of FREO's infringement Plaintiff has suffered substantial monetary damages and other irreparable harm.

119.   As a direct and proximate result of FREO's infringement, FREO made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A)   Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)   Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)   Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

21

(D)      Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT VIII
### Indirect Infringement of Copyrights
### (Against Defendant John Doe 1)

120.     The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

121.     Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

122.     John Doe 1 was a member, manager, or officer of Progress Residential with the right and ability to supervise or control the conduct of its employees and agents.

123.     After further opportunity for investigation or discovery, the facts will likely show that John Doe 1, with knowledge of the infringing activity, directed, participated in, induced, caused, materially contributed to, and benefited from: (A) Progress Residential's use of the Copyrighted Works in ways that infringed Plaintiff's exclusive copyrights therein; and (B) Progress Residential's unauthorized distribution of the Copyrighted Works to Albertelli P.A., Albertelli, and Sawyer for the purpose of allowing Albertelli P.A., Albertelli, and Sawyer to use the Copyrighted Works in ways that infringed Plaintiff's exclusive copyrights.

124.     At all relevant times, John Doe 1 had the right and ability to supervise or control Progress Residential's direct and indirect infringing conduct.  Defendant failed to exercise sufficient supervision or control to prevent Progress Residential's infringements.  After further opportunity for investigation or discovery, the facts will likely show that as a direct and proximate result of such failure, Progress Residential directly and indirectly infringed the Copyrighted Works.

22

125. John Doe 1 derived substantial financial benefits from Progress Residential's direct and indirect infringements of the Copyrighted Works.

126. John Doe 1's conduct constitutes contributory and vicarious infringement of Plaintiff's copyrights in violation of 17 U.S.C. §§ 106, 115, and 501, and further constitutes inducement of infringement.

127. As such, John Doe 1 is liable for Progress Residential's direct and indirect infringement.

128. John Doe 1's contributory, vicarious, and inducement of infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

129. As a direct and proximate result of John Doe 1's infringement, Plaintiff has suffered substantial monetary damages and other irreparable harm.

130. As a direct and proximate result of John Doe 1's infringement, John Doe 1 made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A)   Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)   Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)   Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)   Grant Plaintiff all such other and further relief this Court deems just and proper.

23

## COUNT IX
### Indirect Infringement of Copyrights
### (Against Defendant John Doe 2)

131. The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

132. Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

133. John Doe 2 was a member, manager, or officer of FREO with the right and ability to supervise or control the conduct of its employees and agents.

134. After further opportunity for investigation or discovery, the facts will likely show that John Doe 2, with knowledge of the infringing activity, directed, participated in, induced, caused, materially contributed to, and benefited from: (A) FREO's use of the Copyrighted Works in ways that infringed Plaintiff's exclusive copyrights therein; and (B) FREO's unauthorized distribution of the Copyrighted Works to Albertelli P.A., Albertelli, and Sawyer for the purpose of allowing Albertelli P.A., Albertelli, and Sawyer to use the Copyrighted Works in ways that infringed Plaintiff's exclusive copyrights.

135. At all relevant times, John Doe 2 had the right and ability to supervise or control FREO's direct and indirect infringing conduct. Defendant failed to exercise sufficient supervision or control to prevent FREO's infringements. After further opportunity for investigation or discovery, the facts will likely show that as a direct and proximate result of such failure, FREO directly and indirectly infringed the Copyrighted Works.

136. John Doe 2 derived substantial financial benefits from FREO's direct and indirect infringements of the Copyrighted Works.

137. Defendant's conduct constitutes contributory and vicarious infringement of Plaintiff's copyrights in violation of 17 U.S.C. §§ 106, 115, and 501, and further constitutes inducement of infringement.

138. As such, John Doe 2 is liable for FREO's resulting direct and indirect infringement.

139. John Doe 2's contributory, vicarious, and inducement of infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

140. As a direct and proximate result of John Doe 2's wrongful conduct, Plaintiff has suffered substantial monetary damages and other irreparable harm.

141. As a direct and proximate result of John Doe 2's infringement, John Doe 2 made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A)    Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)    Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)    Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)    Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT X
## Indirect Infringement of Copyrights
### (Against Defendant James E. Albertelli)

142. The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

143. Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

144. Albertelli was a shareholder, director, executive, and/or officer of Albertelli P.A. with the right and ability to supervise or control the conduct of its employees and agents.

145. After further opportunity for investigation or discovery, the facts will likely show that Albertelli, with knowledge of the infringing activity, directed, participated in, induced, caused, materially contributed to, and benefited from Albertelli P.A.'s use of the Copyrighted Works in ways that infringed Plaintiff's exclusive copyrights.

146. At all relevant times, Albertelli had the right and ability to supervise or control Albertelli P.A.'s infringing conduct. Defendant failed to exercise sufficient supervision or control to prevent Albertelli P.A.'s infringements. After further opportunity for investigation or discovery, the facts will likely show that as a direct and proximate result of such failure, Albertelli P.A. infringed the Copyrighted Works.

147. Defendant derived substantial financial benefits from Albertelli P.A.'s infringement.

148. Defendant's conduct constitutes contributory and vicarious infringement of Plaintiff's copyrights in violation of 17 U.S.C. §§ 106, 115, and 501, and further constitutes inducement of infringement.

149. As such, Albertelli is liable for Albertelli P.A.'s infringement.

150.   Albertelli's contributory, vicarious, and inducement of infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

151.   As a direct and proximate result of Albertelli's wrongful conduct, Plaintiff has suffered substantial monetary damages and other irreparable harm.

152.   As a direct and proximate result of Albertelli's infringement, Albertelli made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A)   Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)   Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)   Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)   Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT XI
### Indirect Infringement of Copyrights
### (Against Defendant Jonathan D. Sawyer)

153.   The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

154.   Plaintiff is the owner of the Copyrighted Works each of which covers an original work of authorship.

155.   Sawyer was a shareholder, director, executive, and/or officer of Albertelli P.A. with the right and ability to supervise or control the conduct of its employees and agents.

27

156.   After further opportunity for investigation or discovery, the facts will likely show that Sawyer, with knowledge of the infringing activity, directed, participated in, induced, caused, materially contributed to, and benefited from Albertelli P.A.'s use of the Copyrighted Works in ways that infringed Plaintiff's exclusive copyrights.

157.   At all relevant times, Sawyer had the right and ability to supervise or control Albertelli P.A.'s infringing conduct.   Defendant failed to exercise sufficient supervision or control to prevent Albertelli P.A.'s infringements.   After further opportunity for investigation or discovery, the facts will likely show that as a direct and proximate result of such failure, Albertelli P.A. infringed the Copyrighted Works.

158.   Defendant derived substantial financial benefits from Albertelli P.A.'s infringement.

159.   Defendant's conduct constitutes contributory and vicarious infringement of Plaintiff's copyrights in violation of 17 U.S.C. §§ 106, 115, and 501, and further constitutes inducement of infringement.

160.   As such, Sawyer is liable for Albertelli P.A.'s infringement.

161.   Sawyer's contributory, vicarious, and inducement of infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

162.   As a direct and proximate result of Sawyer's wrongful conduct, Plaintiff has suffered substantial monetary damages and other irreparable harm.

163.   As a direct and proximate result of Sawyer's infringement, Sawyer made substantial profits.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

28

(A)     Permanently enjoin Defendant from continuing to infringe Plaintiff's exclusive copyrights;

(B)     Order that Defendant destroy all copies of Plaintiff's Copyrighted Works that are in Defendant's possession, custody, or control;

(C)     Award Plaintiff the actual damages suffered as a result of the infringements and Defendant's profits that are attributable to the infringements, pursuant to 17 U.S.C. § 504(b); and

(D)     Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT XII
## Breach of Contract
## (Against Defendant FREO Florida LLC)

164.    The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

165.    In November 2012, FREO accepted an assignment of a written contract that required it to pay Title Capital a four percent (4%) commission on the winning bid price for all properties acquired by Title Capital for FREO.

166.    Between November 2012 and April 2013, FREO performed on its obligation to pay Title Capital its four percent commission on properties acquired at auction for FREO.

167.    In April 2013, Title Capital successfully acquired ten (10) properties at auction for FREO.  Despite demand by Title Capital, FREO has refused to pay TCM its four percent commission for the acquisition of these properties.

168.    FREO's refusal to pay these commissions is a material breach of the Contract.

169.    Title Capital also completed title and lien searches for approximately 2000 properties in or about April 2013 in an effort to determine target properties.  Pursuant to the

Contract FREO was obligated to pay Title Capital $30.00 per title search and was required to reimburse Title Capital's costs for the lien searches.

170.    FREO failed to pay Title Capital for these title and lien searches, which constituted another material breach of the Contract.

171.    As a direct and proximate result of FREO's breaches, Title Capital has been damaged in excess of $75,000.00

172.    Title Capital performed all material obligations under the Contract and all conditions precedent to the institution and maintenance of this action have been satisfied, fulfilled, or otherwise waived.

173.    Title Capital has retained the undersigned counsel to represent its interests in this action is obligated to pay a fee for counsel's services.  Pursuant to the Contract, Title Capital is entitled to recover its attorneys' fees, expenses and costs in seeking to enforce the Contract.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant FREO Florida LLC as follows:

(A)    Award Plaintiff the actual damages suffered as a result of the breaches of contract, plus interest;

(B)    Award Plaintiff its Attorneys' Fees and Costs, as incurred in seeking to enforce payment under the Contract; and

(C)    Grant Plaintiff all such other and further relief this Court deems just and proper.

## COUNT XIII
### Breach of Verbal Conrtact
### (Against Defendant FREO Florida LLC)

174.    The allegations set forth in paragraphs 1-57 are hereby re-alleged as if fully set forth herein.

30

175. In the event that the written Contract and/or Assignment are deemed invalid, FREO Florida breached a verbal agreement with Title Capital that required it to pay Title Capital a four percent commission on the winning bid price for properties that Title Capital successfully acquired at auction for FREO after November 2012 and that required it to pay Title Capital $30.00 for title searches and to reimburse Title Capital for the cost of lien searches, which are necessary to identify target properties.

176. Between November 2012 and May 2013, Title Capital and FREO had an agreement whereby Title Capital would perform auction bidding services for FREO and, in return, FREO would pay Title Capital a fee of four percent of the winning bid price on all properties that Title Capital acquired at auction for FREO. The agreement also required FREO to pay Title Capital $30.00 for title searches and to reimburse the costs of lien searches.

177. The parties fully performed based on this agreement and, between November 2012 and April 2013, FREO paid Title Capital its four percent fee on properties acquired for FREO, and it paid the title search fees and lien search reimbursements.

178. In reliance on the aforementioned agreement, and based on past performance by FREO, Title Capital conducted title and lien searches on approximately 2,000 properties and subsequently acquired ten (10) of them at auction for FREO during the month of April 2013. Despite demand by Title Capital, however, FREO has refused to pay TCM its four percent commission for the acquisition of these properties and it has not paid for the title and lien searches.

179. FREO's refusal to pay the commissions and for the title and lien searches constitutes a material breach of the agreement between the parties.

180.    As a direct and proximate result of FREO's breach, Title Capital has been damaged in an amount that exceeds $75,000.00.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant FREO Florida LLC as follows:

(A)    Award Plaintiff the actual damages suffered as a result of the breaches of contract, plus interest; and

(B)    Grant Plaintiff all such other and further relief this Court deems just and proper.

### Demand For Jury Trial

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 30, 2016.

32

Respectfully submitted,

/s/ M. Keith Lipscomb
M. Keith Lipscomb, Esq.
Fla. Bar No. 429554
David F. Tamaroff, Esq.
Fla. Bar No. 92084
**LIPSCOMB, EISENBERG & BAKER, PL**
2 S. Biscayne Boulevard, Penthouse 3800
Miami, Florida 33131
Tel:      (786) 431-2228
Fax:      (786) 431-2229
seisenberg@lebfirm.com
klipscomb@lebfirm.com
dtamaroff@lebfirm.com
*Attorneys for Plaintiff*

-and-

Todd L. Wallen, Esq.
Fla. Bar No. 151203
Jermaine A. Lee
Fla. Bar No. 850861
**WALLEN HERNANDEZ**
**LEE MARTINEZ LLP**
255 Aragon Avenue, Suite 200
Coral Gables, Florida 33134
Telephone: (305) 842-2100
Facsimile: (305) 842-2105
todd@whlmlegal.com
jlee@whlmlegal.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of September, 2016, a true and correct copy

of the foregoing was filed with the Clerk of the Court and served on all of those parties receiving

electronic notification via the Court's CM/ECF electronic filing system.

By:   /s/David F. Tamaroff
        David F. Tamaroff

33

## FLORIDA ACQUISITION SERVICES AGREEMENT

THIS BIDDING AGREEMENT (this "Agreement"), dated as of November ____, 2012 (the "Effective Date") is entered into by and between Fundamental REO LP, a Delaware Limited Partnership ("FREO"), and Title Capital Management LLC, a Florida limited liability company ("TCM")(each individually, a "Party" and collectively, the "Parties").

### RECITALS

WHEREAS, FREO is a real estate investment fund that acquires, leases and manages single family assets across the United States; and

WHEREAS, TCM is a service provider for the procurement of distressed real estate acquisitions in the State of Florida and an expert in the foreclosure auction arena;

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and obligations set forth in this Agreement, the Parties hereby agree as follows:

1. **Services to be Provided by TCM.** TCM will provide the following services to FREO:
   a. Bid at County Foreclosure Auctions in counties designated by FREO, which presently include Charlotte, Duval, Hillsborough, Lee, Manatee, Orange, Pasco, Pinellas and Polk. This list of counties may be expanded or reduced from time to time.
   b. Complete due diligence on properties that are the subject of upcoming foreclosure auctions including:
      i. Conducting a Title Search on each FREO designated target; and
      ii. Conducting a Lien Search on each FREO designated target.
   c. Provide title insurance on each property acquired at auction by TCM for FREO.

2. **Payment Terms.**
   a. For the auction bidding, FREO will pay TCM 4% (FOUR PERCENT) of the auction winning bid price for each property successfully acquired by TCM for FREO at auction (the "Bidding Fee").
   b. For due diligence matters, FREO shall pay TCM the following:
      i. $30 per Title Search conducted; and
      ii. Reimbursement of any Lien Search fees, if any, charged by the municipality, county or city where a FREO designated target is located.
   c. For title insurance, FREO will pay TCM the Florida promulgated rate and any additional charge for a certified title search charged by the title underwriter.

Auction Bidding Agreement



3.  **Payment Schedule.**

    a. For the auction bidding, FREO will pay TCM the Bidding Fee per property when FREO delivers the balance of winning auction bid payment to the applicable Clerk of Court, which is within 24 business hours of successfully winning the bid.

    b. For due diligence matters, TCM will invoice FREO monthly and FREO will deliver payment to TCM upon receipt of the invoice.

    c. For title insurance, FREO will pay TCM per property upon issuance and delivery of the title policy to FREO.

4.  **Notices.** All notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given when delivered in person or transmitted by facsimile transmission or on the first business day after being sent by overnight currier, to the following addresses or to such other address as any party hereto shall designate to the other for such purpose in the manner set forth in this **Paragraph 4**:

    If to FREO:
        _____
        _____
        _____
        Email:

    If to TCM:
        848 Brickell Avenue
        Suite 300
        Miami, Florida 33131
        Email: erik@wesoloskicarlson.com

5.  **Modifications and Waivers.** No supplement, modification, or waiver of this Agreement or any provision hereof shall be binding unless executed in writing by all Parties hereto. No waiver of any of the provisions of this Agreement shall constitute a waiver of any other provision, nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

6.  **Invalidity.** The invalidity, illegality or unenforceability of any provision or provisions of this Agreement will not affect any other provision of this Agreement, which will remain in full force and effect, nor will the invalidity, illegality or unenforceability of a portion of any provision of this Agreement affect the balance of such provision. In the event that any one or more of the provisions contained in this Agreement or any portion thereof shall for any reason be held to be invalid, illegal or unenforceable in any respect, this Agreement shall be reformed, construed and enforced as if such invalid, illegal or unenforceable provision had never been contained herein.

7.  **Governing Law; Attorneys' Fees; Jurisdiction.** This Agreement shall be construed in accordance with the laws of the State of Florida, without application of the principles of

conflicts of laws. If it becomes necessary for any party to institute legal action to interpret or enforce the terms and conditions of this Agreement, the successful party will be awarded reasonable attorneys' fees at all trial and appellate levels, expenses and costs. Exclusive jurisdiction for any action arising out of this Agreement shall be the Federal or state courts in Miami-Dade County, Florida.

8.   **Binding Effect.**   This Agreement shall be binding upon and inure to the benefit of all signatories' respective successors, legal representatives, grantees and assigns, as applicable and appropriate.

9.   **Execution of Counterparts.**   This Agreement may be executed in any number of counterparts, including facsimile and pdf signatures which shall be deemed as original signatures.   Each counterpart when so executed and delivered shall be deemed an original, all of which shall together constitute one and the same instrument.

10.   **Entire Agreement.**   This Agreement contains the entire understanding of the Parties and supersedes all previous verbal and written agreements; there are no other agreements, representations or warranties not set forth herein.

11.   **Construction; Interpretation.**   The headings, titles, or captions of sections contained in this Agreement are provided for convenience of reference only, and shall not be considered a part of this Agreement.   Such headings, titles, or captions are not intended to define, limit, extend, explain, or describe the scope of this Agreement or any of its terms, provisions, representations, warranties, covenants or the like, in any way whatsoever.   All pronouns and variations thereof shall be deemed to refer to the masculine, feminine, or neuter, and to the singular or plural, as the identity of the person(s) may require.   Any rule or principle of contractual construction that would otherwise require any aspect of this Agreement to be interpreted against the party primarily responsible for its drafting shall not be employed in the interpretation hereof.

*[Signature page follows]*

Auction Bidding Agreement

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date.

TITLE CAPITAL MANAGEMENT, LLC

By: _____

Erik Wesoloski, President

FUNDAMENTAL REO LP

By: _____

Donald Mullen,

Auction Bidding Agreement

## ASSIGNMENT

THIS ASSIGNMENT is made effective as of November, 2012 (the "Effective Date"), by Progress Residential LP f/k/a Fundamental REO LP ("Assignor") and FREO Florida, LLC ("Assignee").

## WITNESSETH:

WHEREAS, as of November, 2012, Assignor entered into that certain Florida Acquisition Services Agreement (the "FASA") with Title Capital Management, LLC; and

WHEREAS, in connection with Assignor's execution of the FASA, Assignor desired and intended to assign to Assignee any and all rights held by Assignor under or through the FASA, and Assignee desired and intended to accept said assignment.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, as well as other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound hereby, covenant and agree as follows:

1. It was the intent of the Assignor that effective upon execution of the FASA that any and all of Assignor's rights, interests, duties and responsibilities under or through the FASA be assigned to Assignee, and it was the intent of Assignee to accept said assignment and assume all of Assignor's rights, interests, duties and responsibilities set forth under or though the FASA.

2. At all material times following the execution of the FASA, Assignor and Assignee substantively operated and performed under the FASA with an intention and understanding that FASA had been assigned from Assignor to Assignee.

3. It is hereby the intent of Assignor and Assignee to reflect the parties' prior and continuing intention and desire that FASA be assigned by Assignor to Assignee and by executing this Assignment, agree to further document, in writing, said assignment.

4. Effective as of the Effective Date, Assignor hereby expressly grants, transfers, conveys and assigns any and all of Assignor's rights, title and interest in and to the FASA and any and all other rights, interests, or other matters related to or flowing from the FASA, including all causes of action, held by Assignor at any time, whether at law or in equity, to Assignee.

5. Effective as of the Effective Date, Assignee hereby agrees to accept said assignment identified in Paragraph 4 above and otherwise described herein and further agrees to assume, perform and be bound by the FASA in the same manner as Assignor.

6. The provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

Page 1 of 4

7.      This Assignment constitutes the entire understanding between the parties pertaining to the subject matter of this Assignment.  Nothing contained in this Assignment shall be deemed to be a waiver by either party of any right or interest which is not otherwise expressly identified and waived in writing by both parties, all of which are hereby expressly reserved and may be exercised at any time.

8.      If any one or more of the provisions of this Assignment is held invalid or unenforceable, the provision will be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Assignment and all other applications of such provisions will not be affected by any such invalidity or unenforceability.

9.      THIS ASSIGNMENT WILL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA, WITHOUT REGARD FOR ANY CONFLICT OF LAW PRINCIPALS THAT WOULD LEAD TO THE LAW OF A DIFFERENT STATE BEING APPLIED IN THE ABSENCE OF THIS PROVISION.

10.      This Assignment may be executed in any number of counterparts, whether by original signature, copy, or telecopy, each of which, when executed and delivered, will be deemed an original, but all of which together will constitute one binding agreement and instrument.

**IN WITNESS WHEREOF,** the parties hereto have caused this Assignment to be duly executed as of the Effective Date identified above.

[Signature Pages to Follow]

Page 2 of 4

WITNESSES:

ASSIGNOR:

Progress Residential LP f/k/a Fundamental REO LP

Print
Name: _Jeffrey Merics_

By: _____
Name: Donald Mullen
Title: Authorized Person
Date: July 26, 2016

Print
Name: _Lauren Waxman_

STATE OF NEW YORK
COUNTY OF NEW YORK

THE FOREGOING instrument was acknowledged before me this _26_ day of _July_, 2016, by _Donald Mullen_, as _Authorized Person_ of Progress Residential LP f/k/a Fundamental REO LP. He/She is personally known to me or has produced _____ as identification.

_Priscilla R. Coleman Dykes_
Print, Type or
Stamp
Name: _Priscilla R Coleman Dykes_
Notary Public, State of New York
Serial No., if any: _____

PRISCILLA R COLEMAN DYKES
Notary Public - State of New York
No. 01CO6197368
Qualified In New York County
My Commission Expires December 1, 20_16_

Page 3 of 4

WITNESSES

ASSIGNEE:

FREO Florida, LLC,

By: _____

Name: Donald Mullen

Title: Authorized Person

Date: July 26, 2016

Print

Name: Jeffrey _____

Print

Name: Lauren Waxman

STATE OF NEW YORK
COUNTY OF NEW YORK

THE FOREGOING instrument was acknowledged before me this 26 day of July, 2016, by Donald Mullen, as Authorized Person of FREO Florida, LLC. He/She is personally known to me or has produced _____ as identification.

Print, Type or Stamp

Name: _____

Notary Public, State of New York

Serial No., if any: _____

PRISCILLA R COLEMAN DYKES
Notary Public - State of New York
No. 01CO6197368
Qualified in New York County
My Commission Expires December 1, 20 16